IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

UNITED STATES OF AMERICA

v.

EDDIE WAYNE LOUTHIAN, SR.
SALTVILLE RESCUE SQUAD, INC.
MONICA JANE HICKS,

    **Defendants**

MEMORANDUM OPINION
Case No.: 1:12cr00002

This matter is before the court on the motion of defendant Eddie Wayne Louthian Sr. to modify the court's previously entered protective orders, (Docket Item No. 76) ("Motion"). Based on the arguments and representations of counsel heard before the undersigned on May 17, 2012, and for the reasons set out below, the Motion will be denied.

I.

The Indictment in this case charges the Saltville Rescue Squad, ("Squad"), and two of its employees, Eddie Wayne Louthian Sr. and Monica Jane Hicks, with numerous counts, including health care benefit fraud, making false statements with regard to a health care benefit program and money laundering. The Indictment alleges that the Squad fraudulently received approximately $880,000.00 in reimbursements from Medicare and Anthem Blue Cross and Blue Shield, ("Anthem"), for ambulance transports between December 6, 2005, and September

1

17, 2011. The Indictment also alleges that, during this same period of time, Louthian was a paid employee of the Squad earning between $20,000.00 and $52,000.00 a year. The Indictment further alleges that on June 18, 2008, the Squad purchased a 40.37-acre tract of land on Buckeye Hollow Road in Saltville for $175,000.00. The Indictment alleges that this purchase was part of a package deal in which Louthian also purchased an adjacent five-acre tract for only $10,000.00 at the same time from the same seller.

The Indictment also contains a Notice of Forfeiture, which seeks forfeiture from the defendants of:

> a. any property, real or personal, that constitutes, or is derived, directly or indirectly, from gross proceeds traceable to the commission of the scheme to defraud for which the defendant is convicted…; and
> b. any property, real or personal, involved in said offenses, or any property traceable to such property….
> 2. The property to be forfeited to the United States includes but is not limited to the follow property:
> a. **Money Judgment**
> Not less than $880,000 … and all interest and proceeds traceable thereto, in that such sum in aggregate was obtained directly or indirectly as a result of said offenses or is traceable to such property.

The Notice of Forfeiture also seeks forfeiture of the Buckeye Hollow Road properties from the Squad and Louthian. The Notice also states that the Government will seek forfeiture of substitute property worth up to $880,000.00, if the Government cannot locate forfeitable property of this value.

2

Subsequent to Indictment, the Government sought and obtained, ex parte, a seizure warrant and protective order from the court. Pursuant to Seizure Warrant issued February 2, 2012, (Docket Item No. 41), the Government seized all funds in excess of $10,000.00 in the Squad's bank account. The First Protective Order also was entered on February 2, 2010, (Docket Item No. 42), and allowed the unseized funds in the Squad's bank account to be used for certain permissible expenditures and transactions in the ordinary course of business, provided that Louthian was removed as signatory for the account. The permissible expenditures and transactions listed in the First Protective Order did not include the use of the funds in the Squad's bank account to make any payments to Louthian and his family members. On March 30, 2012, the court entered the Modified Protective Order, (Docket Item No. 60). The Modified Protective Order also did not allow the Squad to make any payments to Louthian or his family members.

The protective orders also include language that states that the Squad and Louthian are restrained, prohibited and enjoined from:

> … attempting or completing or causing any action or transaction that would affect the marketability, value, or availability of forfeitable property, including but not limited to selling, assigning, pledging, distributing, encumbering, wasting, secreting or in any way transferring or disposing of, or removing from the jurisdiction of this Court, all or any part of their interest, direct or indirect, in any and all property….

The Motion seeks the court's approval to allow Louthian to continue to work

3

for and to be paid by the Squad pending trial. The Motion also seeks the court's approval for Louthian to sell a single-family residence that he owns on Buckeye Street in Saltville. Louthian has provided the court with a declaration made under penalty of perjury stating that he purchased the Buckeye Street property in 1988 and completely paid for the property by 1992, more than a decade before the alleged scheme which is the subject of the Indictment. In this declaration, Louthian places the value of the Buckeye Street property at $40,000.00.

The Government responded opposing the Motion. The Government further seeks to modify Louthian's conditions of release to prevent any contact by Louthian with the Squad. Counsel argued the Motion before the undersigned on May 17, 2012. The Motion is ripe for decision.

II.

Louthian argues that the court's protective orders do not restrain his ability to sell the Buckeye Street property because that property is not "tainted" property, but rather "substitute" property. Substitute property, Louthian argues, is not subject to pretrial restraint. In the alternative, Louthian argues that, if the court's protective orders apply, the court should allow him to sell the property and use the proceeds to provide for himself and his family pending trial.

The Government does not contest Louthian's assertion that the Buckeye Street property was not used in the commission of or purchased with the proceeds of the health care fraud scheme alleged in the Indictment. The Government,

4

nonetheless, asserts that the protective orders prohibit Louthian from disposing of any property that could be forfeited as substitute assets if, upon conviction, the government cannot recover $880,000.00 of assets directly linked to the alleged health care scheme.

The language of the protective orders is broad. As stated above, the orders apply to "…any and all property…" owned by Louthian. Futhermore, the plain language of the applicable federal statutes allows the pretrial restraint of forfeitable assets. The procedures set out in the Controlled Substances Act at 21 U.S.C. § 853 "apply to all stages of a criminal forfeiture proceeding…." 28 U.S.C.A. § 2461(c) (West 2006). Section 853(e)(1) allows a federal court to enter a restraining order to protect the availability of a defendant's property for forfeiture upon the filing of an indictment alleging that the property with respect to which the order is sought would be subject to forfeiture upon the defendant's conviction. *See* 21 U.S.C.A. 853(e)(1). Section 853(p) also allows the court to order the forfeiture of any property of the defendant when the defendant has disposed of or the government cannot locate the proceeds gained by or the property used in the criminal activity. *See United States v. Morgan*, 224 F.3d 339, 341 (4th Cir. 2000) (citing 21 U.S.C.A. § 853(p)); *see also United States v. Poulin,* 690 F. Supp. 2d 415, 431 (E.D. Va. 2010) (in federal health care fraud case, district court found forfeiture of substitute property warranted by express incorporation of § 853(p) into 18 U.S.C. § 982, the criminal forfeiture statute at issue). Furthermore, the Fourth Circuit and district courts located therein have held that substitute assets are subject to pretrial restraint under § 853 to preserve their availability for forfeiture upon conviction. *See United States v. Bollin,* 264 F.3d 391, 421-22 (4th Cir. 2001); *see also United States v.*

5

*Woods,* 436 F. Supp. 2d 753, 755 (E.D. N.C. 2006) (in wire fraud case, district court held government gained interest in all forfeiture property owned by defendants, including any identifiable substitute property, at time crimes alleged in indictment occurred); *United States v. Wu,* 814 F. Supp. 491, 493 (E.D. Va. 1993) (held a restraining order issued upon the filing of an indictment or information pursuant to § 853(e)(1)(A) may apply to substitute assets under § 853(p)). Based on this, I will deny the Motion insofar as it seeks to modify the court's protective orders to allow Louthian to sell his Buckeye Street property.

Louthian also seeks to modify the court's protective orders to allow him to return to work for the Squad pending trial. This court has not entered any order which prevents Louthian from continuing to volunteer with the Squad. As stated above, however, the court's previously entered protective orders prevent any payments by the Squad to Louthian or his family members. The protective orders also required the removal of Louthian as a signatory on the Squad's bank account. The Government argues that Louthian and the Squad have violated the protective orders by continuing to make payments to Louthian after the orders' entry. The Government also argues that Louthian and the Squad provided the Government and the court with a deceptive business statement, designed to hide these continuing payments to Louthian. The Government argues that these facts justify refusing Louthian's request to return to work for the Squad and granting its request to prevent further contact between Louthian and the Squad.

Regarding the Squad's earlier request to modify the protective orders, the Squad's treasurer, Linda Larmer, did appear before this court and admitted that the

6

Squad continued to pay Louthian after entry of the protective orders. Larmer further admitted that it was Louthian's idea to set up a new bank account for the Squad, an act also prohibited by the protective orders, to facilitate these continuing payments to him. Also, Larmer testified that the Squad's business statement presented to the court was prepared by Louthian. Larmer also admitted that payments made to Louthian were not listed on this statement as payroll expenses, but rather were listed in a miscellaneous category.

Based on these facts, I find that allowing any payments by the Squad to Louthian pending trial raises too great a risk of abuse with resulting loss of assets that may be available for forfeiture upon conviction. Furthermore, I find that Louthian has not shown that continued employment by the Squad is necessary to provide for his or his family's support pending trial. In particular, Louthian has admitted that, in addition to his work for the Squad, he also owns and operates a private ambulance service, Trinity Ambulance Service. While Louthian has testified that this business currently operates with little, if any, profit, he has not explained why he could not pay himself to perform EMT services for wages for Trinity. Therefore, I will deny the Motion insofar as it seeks to modify the protective orders to allow payment of wages by the Squad to Louthian pending trial.

I am not persuaded, however, that I should modify Louthian's conditions of release at this time to prevent all contact between Louthian and the Squad.

An appropriate order will be entered.

ENTERED this 22nd day of May, 2012.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE